# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBERT DESHAZO, JR., an individual; THE ESTATE OF DOUGLAS LANDWER by and through its designated personal representative, Douglas J.. Landwer; BERKSHIRE WEST LLC, an Idaho limited liability company, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. CV 05-202-S-EJL |
| v. | ) ) | |
| THE ESTATE OF PAUL B. CLAYTON, by and through its personal representative; THE PAUL B. CLAYTON FAMILY TRUST; JOHN DOES I to V, | ) ) ) ) ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) ) | |

Currently pending before the Court are Plaintiffs' Motion for Punitive Damages (Docket No. 77), Defendants' Motion for Summary Judgment (Docket No. 84), Defendants' Motion in Limine to Preclude Trial Testimony of Plaintiffs' Purported Experts (Docket No. 80), Defendants' Motion in Limine to Preclude Plaintiffs' Testimony Under the Idaho Dead Man's Statute (Docket No. 82), and Plaintiffs' Motion to Modify and/or Enlarge Time Re: Scheduling Order (Docket No. 89).  Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Report and Recommendation pursuant to 28 U.S.C. § 636(b).

**REPORT AND RECOMMENDATION - 1**

# I.

# BACKGROUND

The present action arises out of Paul Clayton's purchase of property in Eagle, Idaho (the

"Property").  Clayton obtained title to the Property in his name as an "unmarried man" by

Warranty Deed from Kathryn H. Mauritz on May 4, 2001.  *Defendants' Statement of Undisputed*

*Facts*, p. 4 & Exhibit C (Docket No. 91); *Defendants' Rule 56(e) Supplementation*, Exhibit 1, ¶ 6

(Docket No. 113, Att. 1).  Almost three years later, in May of 2004, Clayton created the Paul B.

Clayton Trust (the "Trust") and, on May 5, 2004, transferred the Property to the Trust.

*Defendants' Statement of Undisputed Facts*, Exhibit D (Docket No. 91); *Defendants' Rule 56(e)*

*Supplementation*, Exhibit 1, ¶ 7 (Docket No. 113, Att. 1).  Clayton passed away on February 14,

2005.  *Defendants' Statement of Undisputed Facts*, p. 4 (Docket No. 91).

Plaintiffs claim that Clayton purchased the Property on behalf of Berkshire West, an

association created by Paul Clayton, Robert DeShazo, and Douglas Landwer (collectively

"Members") for the purpose of developing the Property.  At the time Clayton purchased the

Property, DeShazo held an "Exclusive Purchase Agreement" for the Property.  *DeShazo*

*Affidavit*, Exhibit A (Docket No. 99, Att. 2).  DeShazo entered into this agreement with the

Property owner, Kathryn Mauritz, on November 24, 2000, before Berkshire West was organized.

*Id.*  The agreement recites that Mauritz agreed to accept three non-refundable payments of

$2,000 each "for the exclusive right of Robert DeShazo to purchase [the] property" for the sum

of $330,500.00.  *Id.*  The $2,000 payments were to be applied to the purchase price.

DeShazo's agreement with Mauritz was amended on April 10, 2001, in order to allow

additional time for DeShazo to obtain Eagle city's approval of a proposed subdivision on the

Property before closing on the purchase.  *Id.* at p. 3.  DeShazo ultimately made $8,000 in payments to retain his exclusive right of purchase, and these payments were credited toward the purchase price when Clayton purchased the Property.  *Defendants' Statement of Undisputed Facts*, Exhibit J (Docket No. 91, Att. 9); *DeShazo Affidavit*, ¶ 4 (Docket No. 99, Att. 1); *Maile Affidavit*, Exhibits A, E & F (Docket No. 99, Atts. 6, 11 & 13).

On January 23, 2001, before Clayton purchased the Property, a Certificate of Assumed Business Name listing the name "Berkshire West" and containing the signatures of Clayton, DeShazo, and Landwer was filed with the Idaho Secretary of State.  *DeShazo Affidavit*, ¶ 3 & Exhibit C (Docket No. 99, Att. 5).  Clayton purchased the Property about five months later, in May of 2001.  Thereafter, on August 2, 2001, Clayton, DeShazo, and Landwer signed Articles of Organization for Berkshire West, LLC, ("Berkshire West" or "LLC") and a Limited Liability Company Management Operating Agreement ("Operating Agreement") for Berkshire West. *Defendants' Statement of Undisputed Facts*, Exhibits A & B (Docket No. 91, Atts. 1 & 2); *Defendants' Rule 56(e) Supplementation*, Exhibit 1, ¶¶ 4,5 (Docket No. 113, Att. 1).

Both the Articles of Organization and the Operating Agreement listed the period of duration for Berkshire West as that necessary to develop the Property until the subdivision was either built out or all the lots were sold.  *Defendants' Statement of Undisputed Facts*, Exhibits A & B (Docket No. 91, Atts. 1 & 2).  The Operating Agreement also set forth the Members' cash, property, and service contributions.  According to the Operating Agreement, each Member, including Clayton, contributed only $1.00 to the LLC.  *Id.* at Exhibit B, p. 6.  In addition, although the Members of the LLC had been associated since January of 2001, the Operating Agreement entered into in August of 2001 specified that it "replaced and supersedes all prior

**REPORT AND RECOMMENDATION - 3**

written and oral agreements among any and all members." *Id.* at p. 10.  Finally, the Operating

Agreement stated that "the members do not consider each other partners . . . with any other

member of this LLC for any purpose other than federal and state tax purposes." *Id.* at p. 5.

Plaintiffs initiated the present action in state court on April 19, 2005 after Clayton died

and the Trust began developing the Property without Plaintiffs' assistance.  Thereafter,

Defendants removed the action to this Court and Plaintiffs filed an Amended Complaint and

Demand for Jury Trial.  *Notice of Removal* (Docket No. 1); *Amended Complaint* (Docket No.

34).  Plaintiffs assert twenty-nine (29) causes of action in their Amended Complaint.  Plaintiffs'

claims can be grouped into six general categories: (1) breach of contract claims; (2) tortious

interference claims; (3) estoppel/reliance equitable claims; (4) claims for creation of a trust; (5)

fraud claims; and (6) claims related to the creation and dissolution of an alleged partnership.

Plaintiffs also request specific performance, an order compelling arbitration, and a declaratory

judgment.  Defendants have moved for summary judgment on all claims.  Plaintiffs assert that

genuine issues of material fact preclude summary judgment.

Defendants also have filed two motions in limine seeking to exclude certain evidence at

trial.  Finally, Plaintiffs have moved to amend their Complaint to add a claim for punitive

damages and have requested an extension of the discovery deadlines.

## II.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.      Standards of Law

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56,

which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element that is essential to the party's case and upon which the party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the nonmoving party fails to make such a showing on any essential element of the party's case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.  *See also* Fed. R. Civ. P. 56(e).[1]

According to Rule 56, an issue must be both "material" and "genuine" to preclude entry of summary judgment.  An issue is "material" if it affects the outcome of the litigation.  An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1]  Fed R. Civ. P. 56(e) states that, in responding to a motion for summary judgment,
    an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The Ninth Circuit Court of Appeals cases are in accord.  *See, e.g., British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Moreover, all inferences must be drawn in the light most favorable to the nonmoving party.  *Id*. at 631.  That is, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied."  *Id*.

In order to withstand a motion for summary judgment, a nonmoving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs.*, 882 F.2d at 374 (citation omitted).  Moreover, where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (citing *Ruffin v. County of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

In recent years the Supreme Court, "by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment." *Cal.  Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th

Cir. 1987).  Therefore, "[n]o longer can it be argued that any disagreement about a material issue

of fact precludes the use of summary judgment."  *Id.*  A material fact is

> one that is relevant to an element of a claim or defense and whose existence
> might affect the outcome of the suit.  The materiality of a fact is thus
> determined by the *substantive law* governing the claim or defense.
> Disputes over irrelevant or unnecessary facts will not preclude a grant of
> summary judgment.

*T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242

(1986)) (emphasis added).

### B.     The Operating Agreement

The primary issue in the present action is whether Clayton purchased the Property on

behalf of Berkshire West or otherwise agreed to contribute the Property to Berkshire West.  Key

to resolving this issue is whether parol evidence can be considered in determining what the

parties agreed to.

Although Clayton, DeShazo, and Landwer began a relationship with each other relative

to the Property in January of 2001, in August of 2001 they entered into a written Operating

Agreement to govern their relationship.  This Operating Agreement contains a clause stating that

it "represents the entire agreement among the members of this LLC, and it shall not be amended,

modified, or replaced except by a written instrument executed by all the parties to this

agreement."  *Defendants' Statement of Undisputed Material Facts*, Exhibit B, p. 10 (Docket No.

91, Att. 3).  The Agreement goes on to state that it "replaced and supersedes all prior written and

oral agreements among any and all members of this LLC."[2]  *Id.*  Thus, as a matter of law, the

---

[2]  This statement sets forth the intent of the Members to dissolve their informal partnership and convert it into a limited liability company.  The Agreement also expressly recites that the Members "do not consider each other partners . . . with any other member of this LLC."  *Defendants' Statement of Undisputed Facts*, Exhibit B, p. 5

(continued...)

**REPORT AND RECOMMENDATION - 7**

Operating Agreement is an integrated agreement.  *Kimbrough v. Reed*, 130 Idaho 512, 515, 943 P.2d 1232, 1235 (1997) (explaining that "a merger clause in an agreement is one means of proving the integrated character of a writing").  In Idaho, "extrinsic evidence of prior or contemporaneous negotiations or conversations" (i.e., parol evidence) is not admissible to contradict, vary, alter, add to, or detract from the terms of an integrated agreement.  *Id.* at 515, 943 P.2d at 1235.

The Operating Agreement sets forth the members' total "cash, *property*," and service contributions.  *Defendants' Statement of Undisputed Facts*, Exhibit B, p. 6 (Docket No. 91, Att. 2) (emphasis added).  According to the Agreement, each member, including Clayton, contributed only $1.00 to Berkshire West.  *Id.*  The Agreement does not mention any contribution of the Property to the LLC, despite the fact that Clayton had purchased the Property approximately three months before the Members formed the LLC.  *Compare Howard v. Perry*, 141 Idaho 139, 142, 106 P.3d 465, 468 (2005) (explaining that there is no requirement that the parties list in the contract everything upon which they had *not* agreed for the contract to be considered integrated; instead, a "written contract that contains a merger clause is complete upon its face").  The Members also did nothing after finalizing the LLC to change the capital contributions listed in

---

[2](...continued)

(Docket No. 91, Att. 2).  Accordingly, Plaintiffs' claims for breach of contract based on an alleged oral partnership agreement fail because any partnership ended in August of 2001 and Clayton's transfer of the Property to the Trust did not occur until almost three years later when the partnership no longer existed.  As a result, there was no partnership contract, oral or otherwise, for Clayton to breach by transferring the Property to the Trust.

Moreover, the Uniform Partnership Act relied on by Plaintiffs provides that property acquired by a partner is partnership property only if acquired in the name of the partnership or in the name of a partner or if the property is transferred to the partnership in its name.  Idaho Code § 53-3-204(a), (b).  Property acquired in the name of a partner, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership, "is presumed to be separate property, even if used for partnership purposes."  *Id* at 53-3-204(d).  That is the case here.  Clayton acquired the Property in his own name, with no mention of Berkshire West or his capacity as a partner.  Thus, even under partnership law, Plaintiffs have no ownership claim to the Property.  For this reason, the Court recommends that summary judgment be granted to Defendants on Counts Twenty and Twenty-Six of the Amended Complaint, both of which allege a breach of a partnership agreement.

**REPORT AND RECOMMENDATION - 8**

the Operating Agreement.  *Plaintiffs' Response to Motion for Summary Judgment*, pp. 14-15 (Docket No. 99).

Moreover, the Operating Agreement provides for the holding of property in a manner directly contrary to that asserted by Plaintiffs.  Pursuant to the Agreement, a member is not allowed to hold property in his own name for the LLC, but rather "[a]ll personal and real property of [the] LLC shall be held in the name of the LLC, not in the names of individual members or managers."  *Defendants' Statement of Undisputed Facts*, Exhibit B, p. 6 (Docket No. 91, Att. 3).  Clayton held the Property in his name, individually, with no mention of Berkshire West.

Plaintiffs, however, allege that the Members agreed in May of 2001 that the Property "would be acquired by Paul Clayton obtaining legal title to the real property in trust for the benefit of the 'partners and/or managing members' and/or the limited liability company to be created and/or in trust for the benefit of all parties."  *Amended Complaint*, ¶ 5 (Docket No. 34). This evidence of a capital contribution structure different than that set forth in the Operating Agreement would contradict, vary, alter or add to the terms of the Operating Agreement.  For this reason, and because the Operating Agreement is an integrated agreement and Plaintiffs' allegation is based on extrinsic evidence of prior conversations (i.e., parol evidence), the evidence offered by Plaintiffs is not admissible.

Because the evidence necessary to show breach of contract is not admissible, the District Court should grant summary judgment in favor of Defendants on Plaintiffs' breach of contract claims (Counts One, Six, and Seven).  Furthermore, because Clayton owned the Property individually and was not required by the Operating Agreement to contribute it to the LLC, his

**REPORT AND RECOMMENDATION - 9**

transfer of the Property to the Trust did not breach a fiduciary duty to Plaintiffs.  *See Plaintiffs' Response to Motion for Summary Judgment*, p. 19 (Docket No. 99) (arguing that Clayton's transfer was fraudulent and in violation of a fiduciary duty).  Therefore, it is recommended that the District Court grant summary judgment to Defendants on Plaintiffs' breach of fiduciary duty claim (Count Nineteen) and on Plaintiffs' fraudulent conveyance claim (Count Twenty-Three).  Consequently, this conclusion leaves no basis for the specific performance requested by Plaintiffs, and it is also recommended that the District Court grant summary judgment to Defendants on Plaintiffs' request for specific performance (Count Twenty-One) seeking transfer of the Property from the Trust to Plaintiffs.

As explained above, the Operating Agreement did not set forth a promise by Clayton to hold the Property for the benefit of Plaintiffs or to transfer the Property to the LLC, so the parties' Agreement cannot be the basis for a quasi-estoppel claim.  Thus, the recommendation is to grant summary judgment on Plaintiffs' quasi-estoppel claim (Count Six), which is based on Plaintiffs' claim that they relied to their detriment on the contract terms and conditions.[3]

Additionally, because Clayton's transfer of the Property to the Trust and the Trust's development of the Property did not violate any term in the Operating Agreement, Defendants' request for summary judgment on Plaintiffs' tortious interference claims should be granted (Counts Two and Three).  Plaintiffs' tortious interference claims are based on their assertion that "certain written agreements" existed stating that they were to receive interests and profits on the

---

[3] This claim and Plaintiffs' claim for promissory estoppel (Count Eleven) are also barred by Idaho's Dead Man's Statute.  *See infra* discussion at Section II.E.  Additionally, promissory estoppel is not appropriate here because it is simply a substitute for consideration, not a substitute for an agreement between parties.  *Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 68, 625 P.2d 417, 422 (1981).

**REPORT AND RECOMMENDATION - 10**

Property.  *Amended Complaint*, pp. 15-18 (Docket No. 34).  Although the LLC was organized for the purpose of developing the Property, there is no written agreement between Clayton and Plaintiffs to provide Plaintiffs the exclusive right to develop the Property or to require Clayton to contribute the Property and profits from it to the LLC.  Because Plaintiffs have no contractual ownership interest in the Property, Defendants' transfer and disposition of the Property did not interfere with Plaintiffs' contractual rights.

### C.      The Idaho Limited Liability Company Act

The Idaho Limited Liability Company Act (the "Act") provides an additional reason for granting summary judgment to Defendants on Plaintiffs' breach of contract, fraud, and tortious interference claims.  The Act provides that any promise by an LLC member to contribute property to the LLC "is not enforceable unless set forth in a writing signed by the member." Idaho Code § 53-627(1).  Plaintiffs have not provided any writing setting forth a promise by Clayton to contribute the Property to Berkshire West that would satisfy the plain language of Section 53-627.[4]

### D.      Statute of Frauds

Although the reasons explained above provide sufficient basis to grant Defendants summary judgment on several of Plaintiffs' claims, other arguments offered by Defendants as additional grounds for summary judgment will be addressed here.  Defendants argue that Idaho's statute of frauds, Idaho Code § 9-503, bars Plaintiffs' claims because the alleged oral agreement

---

[4]  The Petition for Annexation signed by Clayton (described in Section D below) does not set forth a *promise* to contribute the Property to the LLC.  It merely recites that Berkshire West, Clayton, DeShazo, and Landwer are the record owners of the Property, a statement that was not accurate and was later corrected by Clayton in an Affidavit to the Sewer District.

**REPORT AND RECOMMENDATION - 11**

to convey the Property to the LLC and/or Plaintiffs individually does not meet the requirements of Section 9-503, which provides:

> No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

Idaho Code § 9-503.  Pursuant to Section 9-503, if an agreement to transfer real property is not accomplished by an instrument in writing, it is unenforceable both at law and in equity. *Hemingway v. Gruener*, 106 Idaho 422, 424, 679 P.2d 1140, 1142 (1984).

The only writing offered by Plaintiffs that could potentially satisfy the statute of frauds is the Petition for Annexation ("Petition") of the Property into Eagle Sewer District.  *DeShazo Affidavit*, Exhibit F (Docket No. 99, Att. 4).  The Petition is signed by DeShazo, Clayton, and Landwer and lists Berkshire West LLC as the "owner" of the Property and also states that DeShazo, Clayton, and Landwer are the "record owners" of the Property.  *Id.*  "Although no particular instrument is necessary to constitute a note or memorandum required by the statute of frauds, the essential terms of an oral gift must be contained in the writing or writings."  *Erb v. Kohnke*, 121 Idaho 328, 333, 824 P.2d 903, 908 (Ct. App. 1992).  In other words, to be enforceable, "the note or memorandum must state the gift with such certainty that its essentials can be shown from the writing, or by a reference contained in it to some other writing, without recourse to parol evidence to supply the terms."  *Id.*

**REPORT AND RECOMMENDATION - 12**

The Petition does not recite what consideration Clayton received for allegedly giving Plaintiffs an ownership interest in the Property or provide any details about the terms of the parties' agreement.  Additionally, any transfer by way of the Petition does not comply with the Operating Agreement's requirements for contributions of property to the LLC or the requirements of Idaho's Limited Liability Company Act.  Moreover, the Petition's statement that Clayton, DeShazo, and Landwer are the record owners of the Property is not supported by the record.  Clayton held title to the Property individually, the deed was recorded in his name, and he filed an Affidavit with the Sewer District two months after the Petition was filed to explain that he was the current owner of the Property, was aware of the Petition filed by Berkshire West, and consented to the Sewer District's annexation of his Property.  *Defendants' Reply Memorandum*, Exhibit L (Docket No. 106, Att. 1); *Defendants' Rule 56(e) Supplementation*, Exhibit 1, ¶ 17 (Docket No. 113, Att. 1).  Eagle Sewer District then granted the Petition for Annexation, listing Clayton as the "owner" of the Property and Berkshire West as the "Petitioner" for annexation.  *Defendants' Reply Memorandum*, Exhibit O (Docket No. 106, Att. 1).  The state district court approved the application using these same designations for the parties.[5]  *Moser Affidavit*, Exhibit 1, p. 001 (Docket No. 112, Att. 1).

Finally, even if the Petition is sufficient for Clayton to "declare" an interest in the Property in favor of Berkshire West LLC or the Plaintiffs individually, for the reasons explained above, Defendants are still entitled to summary judgment.

---

[5]  Because the Court has recommended that summary judgment be granted in favor of Defendants there is no need to address Defendants' argument that res judicata or collateral estoppel preclude Plaintiffs from contesting that Clayton was the record owner of the Property.

**REPORT AND RECOMMENDATION - 13**

E.       **Idaho Dead Man's Statute**[6]

Defendants also argue that Plaintiffs cannot establish their claims without the testimony

of Paul Clayton and that Idaho's Dead Man's Statute (Idaho Code § 9-202) precludes admission

of his statements and testimony regarding any oral agreements he may have made.[7]  Section 9-

202(3) provides that the following persons cannot be witnesses: "[p]arties or assignors of parties

to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted

against an executor or administrator, upon a claim or demand against the estate of a deceased

person, as to any communication or agreement, not in writing, occurring before the death of such

deceased person."  The majority of Plaintiffs' claims against Clayton's estate and the Trust are

based on an alleged oral agreement with Clayton.  Section 9-202 precludes introduction of

testimony about this agreement because it is not in writing.  *See Thomas v. Thomas*, 83 Idaho 86,

87, 357 P.2d 935, 936 (1960) (precluding testimony that decedent had orally promised to will

land to plaintiff if he would help decedent operate his farm).

While some testimony as to collateral facts such as "delivery of [an] agreement,

possession thereof, and payment or non-payment, or rendition of services, or furnishing goods or

material thereunder" may be admitted, *Dowd v. Estate of Dowd*, 62 Idaho 157, 108 P.2d 287

(1940), these are not the types of facts offered in the present case.  Instead, Plaintiffs seek to

introduce testimony of an oral agreement by Clayton to hold the Property in his name for the

---

[6]  The parties' arguments regarding the applicability of Idaho's Dead Man's Statute are set forth primarily in their briefing on Defendants' Motion in Limine to Preclude Plaintiffs' Testimony Under the Idaho Dead Man's Statute (Docket No. 82).

[7]  Dead Man's Statutes are considered substantive state law and are applied by federal courts in diversity cases.  *See, e.g.*, *Potlatch Oil & Refining Co. v. Ohio Oil Co.*, 199 F.2d 766, 772 (9th Cir. 1952) (applying Montana's statute).

**REPORT AND RECOMMENDATION - 14**

benefit of Berkshire West and its Members.  This type of communication regarding an oral agreement occurring before Clayton's death is the type of evidence precluded by Section 9-202.

However, the evidence should be excluded only in the action against the Estate. Although other jurisdictions have concluded that a Dead Man's Statute bars evidence in actions brought against both the estate and the grantee of the property (here, the Trust), *see, e.g., Amell v. Kucewixa*, 53 F. Supp. 2d 1245 (D. Mass. 1999), the Supreme Court of Idaho has explained that Section 9-202(3) "prohibits testimony introduced against the estate of a deceased person; it does not prohibit the admissibility of this evidence" against other parties.  *Argyle v. Slemaker*, 99 Idaho 544, 547-48, 585 P.2d 954, 957-58 (1978) (declining to apply Section 9-202(3) against the grantee of a mineral deed in an action against the grantee and the estate of the deceased person who granted the mineral deed).  Accordingly, evidence in the action against the Estate of an alleged oral agreement to transfer the Property to or holding it for Berkshire West should be excluded but, depending on the circumstances, some evidence of this nature may be used against the Trust.  It is therefore recommended that the District Court grant in part and deny in part Defendants' Motion in Limine.[8]

For the same reasons, it is appropriate to grant summary judgment in favor of Defendants on some of their claims against the Estate.  For instance, without testimony regarding Clayton's alleged oral communications and agreement, there are no genuine issues of material fact as to Plaintiffs' breach of contract and tortious interference claims (Counts One, Two, Three, Six, and Seven), and it is recommended that the District Court grant summary judgment on this basis. The Court also recommends that the District Court grant Defendants summary judgment on

---

[8]  The practical effect of such a ruling is limited, however, because many of Plaintiffs' claims, although asserted against both the Estate and the Trust, are only viable against the Estate.

**REPORT AND RECOMMENDATION - 15**

Plaintiffs' claim for fraud in the inducement (Count Twenty-Nine) because this claim is based solely on the allegation that Clayton told Plaintiffs he would retain title to the Property for Plaintiffs' benefit.[9]  *See Amended Complaint*, pp. 33-35 (Docket No. 34).

Application of Section 9-202 also provides a basis for summary judgment in favor of Defendants on Plaintiffs' claims for equitable estoppel and the creation of various trusts (Counts Five, Twenty-Five, Twenty-Seven, and Twenty-Eight).  Plaintiffs' equitable estoppel claim is based on their allegation that Clayton assured them he would hold title to the Property in his name for their benefit.  As explained above, this testimony is barred by Section 9-202. Additionally, there is no claim that the Trust made such assurances, and equitable estoppel only keeps a party from benefitting where "the party against whom the doctrine is sought to be invoked falsely represented or concealed a material fact with actual or constructive knowledge of the truth."  *Christensen v. City of Pocatello*, 142 Idaho 132, 139, 124 P.3d 1008, 1015 (2005).

Plaintiffs' claim that Clayton's actions and the "intentions" of the parties led to the creation of an implied or express trust on the Property in favor of Plaintiffs is similarly barred by the Dead Man's Statute.  Any statements Clayton may have made in this regard are not only barred by Section 9-202, but any evidence of the parties' intentions amounts to inadmissible parol evidence contradicting the integrated Operating Agreement.

F.     **Plaintiffs' Remaining Claims**

Counts Fourteen and Fifteen request imposition of a constructive or implied trust on the Property.  The parties have reached an agreement allowing for the Property to be sold and the net

---

[9]  The Trust also cannot be liable for fraud in the inducement because the alleged inducement occurred well before the Trust was even created and because Plaintiffs' factual allegations recite only representations made by Clayton and none made by the Trust.  *Amended Complaint*, p. 35 (Docket No. 34).

**REPORT AND RECOMMENDATION - 16**

profits held in escrow until this litigation is resolved. *Stipulation* (Docket No. 61). Although the sale has not yet been finalized, the parties' Stipulation moots Plaintiffs' claim for a constructive or implied trust on the proceeds from any sale of the Property. As part of the parties' agreement, the proceeds from the sale can only be disbursed by Court order or stipulation of the parties. Thus, the parties by agreement have provided the relief requested by Plaintiffs. Accordingly, Counts Fourteen and Fifteen are moot.

Plaintiffs also have made a claim for civil conspiracy. "Civil conspiracy is not, by itself, a claim for relief." *McPheters v. Maile*, 138 Idaho 391, 395, 64 P.3d 317, 321 (2003). Because the essence of a cause of action for civil conspiracy is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself, and Plaintiffs have demonstrated no civil wrong as the object of the alleged conspiracy, the District Court should grant summary judgment on Count Four.

Plaintiffs have made several claims for equitable relief, including claims for implied in fact contracts and recovery under unjust enrichment and quantum meruit theories. "An implied in fact contract exists where there is no express agreement, but the parties' conduct evidences an agreement." *Barry v. Pacific West Const., Inc*., 140 Idaho 827, 834-35, 103 P.3d 440, 447 (2004). Quantum meruit is the appropriate method of recovery on an implied-in-fact contract. However, because there is an express agreement in the present case, Plaintiffs cannot recover in quantum meruit on an implied-in-fact contract theory. *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 191, 108 P.3d 332, 338 (2005) (explaining that "recovery will not normally lie where there is an express contract governing the relationship of the parties"). Accordingly,

the District Court should grant summary judgment in favor of Defendants on Counts Ten and Thirteen.

In contrast, unjust enrichment is the measure of recovery under a contract implied in law.[10]  *Barry*, 140 Idaho at 835, 103 P.3d at 447.  "A contract implied in law, or quasi-contract, is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent of the agreement of the parties, and, in some cases, in spite of an agreement between the parties."  *Id.* (citation and internal quotation marks omitted).  None of Defendants' arguments would preclude Plaintiffs from recovering restitution damages under an implied in law contract theory.  There is ample evidence in the record that Plaintiffs DeShazo and Berkshire West expended funds to secure the right to purchase the Property and in developing the Property.  Plaintiffs also paid taxes, insurance, and other incidental fees for the Property and Plaintiff DeShazo's company paid Landwer for his time working on the Property development.  *See DeShazo Affidavit*, ¶ 8, 18, 21 & Exhibit E (Docket No. 99, Atts. 1, 2); *Defendants' Statement of Undisputed Facts*, Exhibit K, p. 79-80 (Docket No. 91, Att. 10).  Thus, Defendants' request for summary judgment on Counts Eight and Nine should be denied.[11]

For the same reasons, it is also recommended that Plaintiffs be allowed to proceed with their claim for winding up any business or affairs of the LLC as provided in Idaho Code Section 53-644, if any tasks remain (Count Seventeen).  Concomitantly, it is recommended that summary judgment on Plaintiffs' request for an accounting of the costs and expenses of the LLC be denied

---

[10]  Recovery under an unjust enrichment theory is limited to the amount by which Defendants were unjustly enriched.  *Barry*, 140 Idaho at 835, 103 P.3d at 447.

[11]  Although Plaintiffs made additional equitable claims for promissory estoppel and detrimental reliance, their claims best fit a restitution theory on the facts of this case.  For this reason and the reasons explained above, the District Court should grant Defendants summary judgment on Counts Eleven and Twelve.

**REPORT AND RECOMMENDATION - 18**

(Count Sixteen).  In light of the summary judgment for Defendants on Plaintiffs' claims to the Property through the Operating Agreement Contract, Plaintiffs' request for reformation of the Operating Agreement to provide the correct legal description of the Property is moot.  The LLC's business can be wound up without reforming the Agreement.  Accordingly, summary judgment in favor of Defendants on Count Eighteen is appropriate.

Finally, Plaintiffs have requested an order requiring arbitration (Count Twenty-Four). The parties' Agreement requires mediation and/or arbitration.  *Defendants' Statement of Undisputed Facts*, Exhibit B, pp. 9-10 (Docket No. 91, Att. 3); *Defendants' Rule 59(e) Supplementation*, Exhibit 1, ¶ 5 (Docket No. 113, Att. 1).  However, Plaintiffs filed this action and agreed to submit to a settlement conference as their choice for alternative dispute resolution. *Stipulated Litigation Plan* (Docket No. 9).  The parties participated in a settlement conference before the Honorable Mikel H. Williams on March 28, 2006.  (Docket No. 95).  Because Plaintiffs elected to participate in this type of dispute resolution, and in the absence of a further stipulation between the parties, the mediation/arbitration provision in the parties' Agreement has been satisfied.  Additionally, there is no indication that Plaintiffs sent the required notice to arbitrate to Defendants.  Accordingly, the recommendation is that the District Court grant Defendants summary judgment on Count Twenty-Four.  In addition, disposition of the other twenty-eight counts necessarily provides the declaratory relief requested by Count Twenty-Two.

**REPORT AND RECOMMENDATION - 19**

# III.

## PLAINTIFFS' MOTION FOR PUNITIVE DAMAGES

### A.     Standards of Law

Claims for punitive damages are substantive in nature, and Idaho law is controlling. *Strong v. Unumprovident Corp*., 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005).  Under Idaho law, a party may seek punitive damages only with leave of the Court.  Idaho Code § 6-1604(2).  After a hearing on the matter, the Court "shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."  *Id*.  The standard at trial is proof, "by clear and convincing evidence,[of] oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted."  Idaho Code § 6-1604(1).

Though not typically favored, punitive damages may be recovered in contract action, though only in compelling circumstances.  *Gen'l Auto Parts Co., Inc. v. Genuine Parts Co*., 132 Idaho 849, 852, 979 P.2d 1207, 1210 (1999) (quoting *Cuddy Mountain Concrete, Inc. v. Citadel Constr., Inc.*, 121 Idaho 220, 227, 824 P.2d 151, 158 (Ct.App. 1992)) (internal citation marks omitted).  "The plaintiff must show that the defendant acted in a manner that was an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences."  *Id*. at 852-53, 979 P.2d at 1210-11 (citations omitted).  Moreover, the "justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that be termed 'malice, oppression, fraud or gross negligence;' 'malice, oppression, wantonness;' or simply 'deliberate

and willful.'"  *Id.*; *see also Jones v. Panhandle Distrib., Inc.,* 117 Idaho 750, 755, 792 P.2d 315, 320 (1990).

Therefore, when the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, a motion to amend to assert punitive damages will not be allowed.  *See Strong*, 393 F. Supp. 2d at 1026 (finding the plaintiff had not established a reasonable likelihood of proving by a preponderance of the evidence "the requisite 'extremely harmful state of mind' and 'extreme deviation from reasonable standards'" because the cause of the plaintiff's disability, which was in issue, was "reasonably disputed and there [wa]s substantial medical evidence that support[ed] a conclusion that [the plaintiff] suffers from a sickness") (citing *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1187 (9th Cir. 2004)).[12]

Idaho state courts have also made clear, with respect to punitive damages claims, that the decision whether to submit the punitive damages question to a jury rests within the sound discretion of the trial court.  *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992) (citing *Hoglan v. First Sec. Bank*, 120 Idaho 682, 819 P.2d 100 (1991); *Eddins Constr., Inc. v. Bernard*, 119 Idaho 340, 806 P.2d 433 (1991).  In this respect, the federal courts are in accord with Idaho state substantive and procedural law.  *Foman v. Davis*, 371 U.S. 178 (1962).

Accordingly, though Federal Rule of Civil Procedure 15(a) encourages the liberal granting of motions to amend pleadings, due to the strict conditions precedent to and the disfavor

---

[12]  *Strong* involved the "preponderance of the evidence" standard required in Idaho Code § 6-1604 before its amendment in 2003.  Section 6-1604 now places a higher burden on the moving party, i.e., a requirement for "clear and convincing evidence."  *See also* BLACK'S LAW DICTIONARY 596 (8th ed. 2004) ("***clear and convincing evidence.*** . . . This is a greater burden than preponderance of the evidence . . . .").  Therefore, the *Strong* standard remains applicable.  That is, if the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving parties' claims, the moving party has not met the "preponderance of the evidence" standard; therefore, the moving party has also not met the more stringent "clear and convincing evidence" standard.

of punitive damages, a plaintiff will be allowed to amend the pleadings to assert a claim for punitive damages only if, after weighing the evidence presented, the presiding judge concludes that Plaintiffs have established a reasonable likelihood of proving, by clear and convincing evidence, that Defendants' conduct was oppressive, fraudulent, malicious, or outrageous. *See Vendelin v. Costco Wholesale Group*, 140 Idaho 416, 423, 95 P.3d 34, 41 (2004).

### B.     Discussion

Plaintiffs argue that several facts support their request for punitive damages in this case. Plaintiffs initially claim that Paul Clayton breached a fiduciary duty to their partnership by conveying partnership property to the Trust.  However, even if Plaintiffs can demonstrate that a partnership (and not just a limited liability company) existed at the time of Clayton's May 2004 transfer of the Property to the Trust, the Property was not partnership property subject to a fiduciary duty.

The Uniform Partnership Act provides that property acquired by a partner is partnership property *only* if it is acquired in the name of the partnership or in the name of a partner with an indication in the instrument transferring title of the person's capacity as a partner, or if the property is transferred to the partnership in its name.  Idaho Code § 53-3-204(a), (b).  Property acquired in the name of a partner, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership, "is presumed to be separate property, even if used for partnership purposes."  *Id.* at 53-3-204(d).  That is the case here.  Clayton acquired the Property in his own name, with no mention of Berkshire West or his capacity as a partner.  Thus, even applying the law of partnerships, Plaintiffs have no ownership

**REPORT AND RECOMMENDATION - 22**

claim to the Property, and thus, no fiduciary duty arose in relation to the transfer of the Property to the Trust.

For this reason, the transfer from Clayton as the record owner of the Property to a trust he created does not amount to a fraudulent transfer.  In short, none of Plaintiffs' factual allegations, nor anything else in the record, establish a reasonable likelihood that Plaintiffs can prove, by clear and convincing evidence, that Defendants' conduct was oppressive, fraudulent, malicious, or outrageous.  Accordingly, for the reasons explained above and in Section II of this Report and Recommendation, Plaintiffs' Motion to Amend to allow a claim for punitive damages is not warranted.  It is therefore recommended that the District Court deny Plaintiffs' Motion.

## IV.

## MOTION IN LIMINE[13] & MODIFICATION OF SCHEDULING ORDER

Defendants seek to exclude any expert testimony offered by Plaintiffs at trial because Plaintiffs failed to timely provide Defendants with expert reports by the deadline provided in the Court's scheduling order.  The July 27, 2005 Scheduling Order provides as follows regarding the disclosure of expert witnesses:

> The Plaintiffs shall disclose expert witnesses and the expected testimony of those witnesses on or before November 4, 2005.  The Defendants shall disclose expert witnesses and the expected testimony of those witnesses on or before December 2, 2005.  All rebuttal experts shall be identified on or before December 30, 2005.  F.R.C.P. 26(a)(2)(B), as modified by Local Rule 26.2(b), shall be followed for all expert disclosures.

*Scheduling Order*, p. 2 (Docket No. 16).  Federal Rule of Civil Procedure 16(a)(2)(B) provides that "[e]xcept as otherwise stipulated or directed by the court," the expert witness disclosure

---

[13]  The Court's recommendation on Defendants' Motion in Limine seeking to exclude testimony regarding oral agreements or communications made by Paul Clayton is set forth above in Section II.E.

"*shall* be accompanied by a written report prepared and signed by the witness."  (Emphasis

added).  Local Rule 26.2(b) confirms that the disclosure of expert testimony must be in the form

of a written report prepared and signed by the witness.

It is undisputed that, although Plaintiffs have identified experts, they have failed to timely

submit the required written reports signed by their experts.  Plaintiffs' expert reports were due

more than six months ago on or before November 4, 2005.  Even though Plaintiffs filed a

Stipulated Motion to Amend Scheduling Order (Docket No. 41) on November 28, 2005 (after

Plaintiffs' initial expert reports were due), they did not seek to amend the expert disclosure

deadlines.  The Motion to Amend requested only that the deadlines for completion of discovery,

mediation, and pre-trial motions be extended.  *Stipulated Motion to Amend*, p. 2 (Docket No.

41).  Additionally, the Docket Entry Order approving the Stipulated Motion made it clear that no

other deadlines in the July 2005 Scheduling Order would be extended.  (Docket No. 60).  Thus,

there exists no substantial justification for Plaintiffs' failure to provide timely expert reports as

required by the Scheduling Order and the applicable rules.

As a result, the expert testimony may be introduced only if Plaintiffs' failure to disclose

the required information is harmless.  *See* Fed. R. Civ. P. 37(c)(1) (explaining that information

may be introduced if the failure to disclose was substantially justified or harmless); *Yeti by*

*Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001).  The burden is on

Plaintiffs to prove harmlessness.  *Id.* at 1107.

Defendants argue that Plaintiffs' failure to disclose the expert reports cannot be

considered "harmless" for the following reasons.  First, the deadline for completion of discovery

**REPORT AND RECOMMENDATION - 24**

passed on February 28, 2006 (over three months ago).[14]  Second, Defendants did not retain

experts of their own to rebut Plaintiffs' experts because Plaintiffs had not provided the required

expert reports or the basis for their experts' opinions before the time for designating rebuttal

experts.  Finally, Defendants did not depose Plaintiffs' experts prior to the pre-trial motion

deadline.  Defendants also explain that they relied on the state of the record when filing a

summary judgment motion, participating in a settlement conference, and developing their

litigation strategy.

    In contrast, Plaintiffs argue that the failure to disclose expert reports is harmless because

they disclosed the names of their experts in July 2005 and, on February 3rd and 9th of 2006, they

supplemented their discovery responses to disclose more information about the basis for their

experts' opinions.  Although Defendants had information about Plaintiffs' experts before the

discovery completion and pretrial motion deadlines, only the February 2006 disclosures provided

information about the specifics of the experts' opinions and that information was provided well

after the deadline for Defendants to submit rebuttal expert reports, denying Defendants the

opportunity to effectively rebut the conclusions of Plaintiffs' experts.  *Compare Olson v.*

*Montana Rail Link, Inc*., 227 F.R.D. 550, 552 (D.Mont. 2005) (finding a failure to disclose

expert information to be not harmless where disclosure was made after deadline for rebuttal

reports).

    Plaintiffs have the burden to demonstrate harmlessness but have not done so.

Defendants' opportunity to rebut Plaintiffs' expert testimony has been impeded by the untimely

---

[14]   Additionally, at the time the parties submitted their briefing, a trial had been scheduled for July 25, 2006.  On June 16, 2006, the District Court vacated the trial pending resolution of the pending motions.  Although the trial has been vacated, it will be reset now that the Court has ruled on the pending motions.

disclosure of expert opinions and there may not be sufficient time before trial to depose Plaintiffs' experts, designate Defendants' rebuttal experts, and provide rebuttal expert reports. Thus, Plaintiffs' failure to comply with the Court's Scheduling Order and the Federal and Local Rules is not harmless. Accordingly, as a result of the failure to timely disclose the basis for their experts' opinions and disclose the required expert reports, Plaintiffs should be precluded from presenting the expert testimony of Harley Carlson and Edward Camp at trial.

For similar reasons, Plaintiffs' Motion to Modify and/or Enlarge Time Re: Scheduling Order, filed almost a month after the deadline for completion of discovery in this action and after the deadline for filing dispositive motions, should be denied. Federal Rule of Civil Procedure 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause." Plaintiffs moved to modify the scheduling order after the pertinent deadlines had already passed and dispositive motions had been filed and they have not identified good cause to extend the deadlines. Further, the Court previously advised the parties that it would not grant further extensions of the deadlines. (Docket No. 60). Accordingly, it is recommended that the District Court grant Defendants' Motion in Limine to Preclude Trial Testimony of Plaintiffs' Experts and deny Plaintiffs' Motion to Modify the Scheduling Order.

# V.

## RECOMMENDATION

Based on the foregoing, it is recommended that the District Court enter the following order:

1.      Defendants' Motion for Summary Judgment (Docket No. 84) should be GRANTED as to Counts One, Two, Three, Four, Five, Six, Seven, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Eighteen, Nineteen, Twenty, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, Twenty-Seven, Twenty-Eight, and Twenty-Nine.

2.      Defendants' Motion for Summary Judgment (Docket No. 84) should be DENIED as to Counts Eight, Nine, Sixteen, and Seventeen.

3.      Plaintiffs' Motion for Punitive Damages (Docket No. 77) should be DENIED.

4.      Defendants' Motion in Limine to Preclude Plaintiffs' Testimony Under the Idaho Dead Man's Statute (Docket No. 82) should be GRANTED in part and DENIED in part, as set forth above.

5.      Defendants' Motion in Limine to Preclude Trial Testimony of Plaintiffs' Purported Experts (Docket No. 80) should be GRANTED.

6.      Plaintiffs' Motion to Modify and/or Enlarge Time Re: Scheduling Order (Docket No. 89) should be DENIED.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636 and District of Idaho Local Civil Rule 72.1.  If written objections

are not filed within the specified time, the right to raise factual and/or legal objections in the

Ninth Circuit Court of Appeals may be waived.



DATED:  **June 28, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge